IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC doing business as Volvo Cars Honolulu,<br><br>        Plaintiff,<br><br>   vs.<br><br>VOLVO CAR USA LLC,<br><br>        Defendant.<br>_____<br><br>VOLVO CAR USA LLC,<br><br>        Counter-Claimant,<br><br>   vs.<br><br>ENVY HAWAII LLC doing business as Volvo Cars Honolulu; MIKHAIL FEDOTOV,<br><br>        Counter-Defendants.<br>_____ | Civ. No. 17-00040 HG-RT |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ERIC STOJKIVICH AND GARY KUBA (ECF No. 160)**

This case involves contract disputes and claims of improper business practices between a local automobile dealership and the national distributor of Volvo automobiles.

Envy Hawaii LLC ("Envy Hawaii"), doing business as Volvo Cars Honolulu, was established in December 2012. Envy Hawaii purchased the rights to operate the sole Volvo franchise in Hawaii.

1

Envy Hawaii contracted with Volvo Car USA LLC ("Volvo") to operate its franchise.

In January 2017, Envy Hawaii filed suit against Volvo. Envy Hawaii's First Amended Complaint alleges eight causes of action, including claims that Volvo Car USA LLC violated the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq., the Robinson-Patman Act, 15 U.S.C. § 13(a), and several Hawaii state statutes.

Volvo has filed counterclaims against both Envy Hawaii LLC and its owner, Mikhail Fedotov. The Second Amended Counterclaim contains eleven causes of action including claims for fraud, misrepresentation, breach of contract, unlawful recording, cybersquatting, and unjust enrichment.

Volvo seeks to preclude Envy Hawaii from introducing expert testimony from Eric Stojkovich and Gary Kuba.

Volvo's Motion to Exclude Opinions and Testimony of (ECF No. 160) is **GRANTED, IN PART, AND DENIED, IN PART.**

## STANDARD OF REVIEW

Federal Rule of Evidence 702 provides that "scientific, technical, or other specialized knowledge" by a qualified expert is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702.

The United States Supreme Court, in Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993), held that the District Court has a gatekeeping responsibility to objectively screen expert testimony to ensure that it is not only relevant, but reliable. The District Court's obligation applies to technical and other specialized knowledge as well as testimony based on scientific knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999).

The Ninth Circuit Court of Appeals has explained that expert testimony is relevant if the evidence logically advances a material aspect of the party's case. Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463-64 (9th Cir. 2014). The Court considers if an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline. Kumho, 526 U.S. at 149.

The District Court's inquiry into the admissibility of an expert's testimony, pursuant to Daubert, is a flexible one. Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). The trial court has discretion to decide how to test an expert's testimony for reliability, as well as relevance, based on the particular circumstances of the case. Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). The reliability of an expert's testimony about a relevant issue is best attacked by cross examination, contrary evidence, and

attention to the burden of proof, not by exclusion.  <u>Daubert</u>, 509 U.S. at 564.

The trial court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." <u>Alaska Rent-A-Car</u>, 738 F.3d at 969.  The District Court is tasked with deciding if the expert's testimony has substance such that it would be helpful to a jury, not in deciding if the expert is right or wrong.  <u>Id.</u> at 969-70.

## **ANALYSIS**

Envy Hawaii LLC ("Envy Hawaii") disclosed expert reports form Eric Stojkovich and Gary Kuba.  The Reports are offered in support of Envy Hawaii's theory of damages based on the experts' opinions as to the value of Envy Hawaii's business.  The damages claim is the amount the dealership would have made, if not for Volvo Car USA LLC's alleged conduct.

Stojkovich plans to testify that the projected sales and profit figures, provided to him by Envy Hawaii and Mikhail Fedotov, were reasonable.

Kuba plans to testify that, based on the projections deemed reasonable by Stojkovich, the fair market value for Envy Hawaii was over $15 million by the end of 2017.

There are two main objections by Volvo Car USA LLC ("Volvo").

4

First, Volvo argues that Stojkovich is not qualified to provide expert opinions about car dealerships and that the projections deemed reasonable by Stojkovich should be excluded as unreliable.

Second, Volvo argues that the methods used by Kuba to calculate Envy Hawaii's value are unreliable. Volvo specifically argues that the Kerrigan "blue sky" method was used incorrectly by Kuba, rendering his fair value calculation unreliable, and that his Discounted Cash Flow method of valuation improperly relied upon projections provided by Envy Hawaii management.

**I.     Admissibility Of Envy Hawaii's Expert Eric Stojkovich**

    **A.     Is Stojkovich Qualified To Testify?**

The Court must decide if an expert's testimony has a reliable basis based on his knowledge and experience in the relevant discipline. Kumho, 526 U.S. at 149.

The Court finds that Eric Stojkovich ("Stojkovich") has sufficient experience and expertise to testify about Envy Hawaii's financial records. Stokjovich has 40 years of experience in accounting processes and business management. He served as the controller and chief financial officer of several Hawaii companies and as a founding senior manager of Hawaii's largest accounting firm. (Statement of Qualifications of Eric Stokjovich, attached as Ex. 3 to Def.'s Motion, ECF No. 160-5).

Volvo may cross-examine Stojkovich about his lack of experience in the automotive franchise industry.  His lack of experience in the car sales industry does not render his opinions about Envy Hawaii's financial records, calculations, and projections wholly inadmissible.  McCurley v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 157 (S.D. Cal. Mar. 27, 2019).

### B. Testimony And Evidence Relying On Envy Hawaii's Financial Statements From 2017 Are Not Admissible

Stojkovich's Report includes reliance upon two financial statements from 2017 that were internally prepared by Envy Hawaii management.  (Stojkovich Report dated May 7, 2018, at p. 4, attached as Ex. 1 to Def.'s Motion, ECF No. 160-3).

Envy Hawaii's management did not base the two self-created financial statements on the actual financial records for Envy Hawaii in 2017.  The actual financial records for Envy Hawaii from 2017 were not provided to Stojkovich or to Volvo in discovery.

On March 20, 2019, the Court issued an ORDER DENYING DEFENDANT VOLVO CAR USA LLC'S MOTION FOR SPOLIATION SANCTIONS.  (ECF No. 150).  In the Motion, Volvo sought sanctions against Envy Hawaii because Volvo was unable to obtain discovery from Envy Hawaii and Mikhail Fedotov of the actual financial records from 2017.  Volvo claimed that Envy Hawaii failed to pay its electronic Dealer Management System, which resulted in losing

access to the records. The Court denied Volvo's Motion because it failed to demonstrate that the information was irretrievably lost.

Neither Volvo nor Envy Hawaii chose to engage in the steps necessary to obtain Envy Hawaii's 2017 financial records after Envy Hawaii failed to pay the subscription to the service maintaining Envy Hawaii's records.

Envy Hawaii may not benefit from its own failure to maintain its 2017 financial records. See Kische USA LLC v. Simsek, 2018 WL 620493, *8 (W.D. Wash. Jan. 29, 2018) (finding a party cannot "make up its missing sales figures" in an attempt to introduce evidence at trial that they claim does not exist).

Stojkovich may not base his expert opinion upon the two estimated financial statements from 2017 that were internally prepared by Envy Hawaii management. (Stojkovich Report dated May 7, 2018, at p. 4, attached as Ex. 1 to Def.'s Motion, ECF No. 160-3).

The expert reports may not reference the financial records from Envy Hawaii in 2017 as they were never produced in discovery and cannot be verified.

**C. Stojkovich May Testify As To His Opinion That The Pro-Forma Projections Based On Volvo's Sales Goals Are Reasonable**

Speculative testimony is inherently unreliable and is not

admissible.  Ollier v. Sweetwater Union High School Dist., 768 F.3d 843, 861 (9th Cir. 2014).  The United States Supreme Court has explained that an expert may extrapolate from existing data in order to support his conclusions, but the court may reject expert conclusions where "there is simply too great an analytical gap between the data and the opinion offered."  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

### 1. Financial Records 2013 Through 2016

Here, Stojkovich examined Envy Hawaii's actual financial performance from 2013 through 2016 in order to determine its performance trend and to identify factors relevant to forecasting Envy Hawaii's future financial performance.  The data from 2013 through 2016 allowed Stojkovich to assert in his report that he believes that the pro-forma projections provided by Envy Hawaii Management are reasonable.  He states that he "reviewed and did detailed testing of the pro-forma calculations created by Envy's Management for the fiscal year 2016.  That testing considered each of the [Volvo] actions that had a negative impact on the financial results."  (Stojkovich Report dated May 7, 2018, at p. 9, attached as Ex. 1 to Def.'s Motion, ECF No. 160-3).

### 2. Volvo Sales Goals

Stojkovich testified during his deposition that he

understood the pro-forma projections were based on sales goals that Volvo had supplied to Envy Hawaii. (Deposition of Eric Stojkovich at p. 167, attached as Ex. 2 to Def.'s Motion, ECF No. 160-4). He stated he believed that the sales goals were a reasonable basis to derive the expected sales of Envy Hawaii but for the alleged conduct of Volvo because "everybody seemed to agree on it." (Id. at p. 168). He stated in his Report that "the Envy pro-forma projections for both 2016 and 2017 fairly represent, to a reasonable degree of certainty, Envy's performance if the [Volvo] actions had not been a factor." (Stojkovich Report dated May 7, 2018, at pp. 31, attached as Ex. 1 to Def.'s Motion, ECF No. 160-3).

Volvo may cross-examine Stojkovich about his methodology and the basis for his opinion that the pro-forma projections provided by Envy Hawaii management are reasonable. The trial court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent-A-Car v. Avis Budget Group, Inc., 738 F.3d 960, 969 (9th Cir. 2013). Volvo has not demonstrated that Stojkovich's opinions are so unreliable as to be inadmissible. City of Pomona v. SQM No. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014). Stojkovich may testify as to his methodology and the basis for his opinions at trial. It is the job of the jury to determine whether to credit Stojkovich's opinion. Id. (citing United

States v. Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006)).

## II. Admissibility Of Envy Hawaii's Expert Gary Kuba

Volvo does not challenge the qualifications of Envy Hawaii's expert Gary Kuba. Rather, Volvo argues that Kuba's opinion is inadmissible because it is not based on reliable methodology.

In his expert report, Gary Kuba provided his opinion as to Envy Hawaii's fair market valuation at the end of 2017, under hypothetical conditions. (Gary Kuba Expert Report dated May 7, 2018, attached as Ex. 4 to Def.'s Motion, ECF No. 160-6). On page 27, Kuba states that he estimated Envy Hawaii's fair market value by applying the Kerrigan methodology to calculate Envy Hawaii's purported "blue sky" value. (Id. at p. 27).

Kerrigan Advisors prepares a quarterly "Blue Sky Report" to assist in the valuation of automobile franchises. (Kerrigan Blue Sky Report, Third Quarter, 2017, attached as Ex. 6 to Def.'s Motion, ECF No. 160-8). The Report provides a figure by which one can multiple the past 12 months of sales in order to estimate the fair market value of the automobile franchise. The Report explains its methodology as follows:

> Kerrigan Advisors Blue Sky Charts lay out the high, average and low blue sky multiples for each franchise in the luxury and non-luxury segments. Most dealerships are valued based upon their assets plus blue sky, plus working capital (which is typically excluded in asset transactions). Kerrrigan Advisors' blue sky multiples should be applied to trailing twelve month adjusted pre-tax dealership earnings to estimate

10

blue sky value.

(Id. at p. 22).

Kuba testified in his deposition that he used the Kerrigan Blue Sky multiplier to conduct a valuation for Envy Hawaii ending in December 31, 2017. (Deposition of Gary Kuba at p. 182, attached as Ex. 5 to Def.'s Motion, ECF NO. 160-7). He testified that he applied the Kerrigan blue sky multiplier to Envy Hawaii's projected dealership earnings in order to determine fair market value. (Id. at p. 187). He acknowledged that he did not believe that Kerrigan blue sky multipliers were usually applied to projected earnings, but rather they are generally intended to be based on actual earnings. (Id.)

The fact that Kuba's methodology has not been specifically adopted by Kerrigan does not render the methodology inadmissible. City of Pomona, 750 F.3d at 1044-46. Volvo may cross-examine Kuba on this issue. Volvo's challenge goes to the weight of the evidence, which is determined by the trier of fact, not the Court. Primiano v. Cook, 598 F.3d 558, 564-65 (9th Cir. 2010).

The Kerrigan blue sky method was not the only methodology that Kuba used in order to arrive at Envy Hawaii's projected fair market value at the end of 2017. Kuba also used the Discounted Cash Flow Method. Kuba's calculations for both the Discounted Cash Flow Method and the Kerrigan blue sky method each resulted in a value of approximately $15 million dollars.

Volvo challenges Kuba's calculations based on the Discounted Cash Flow Method.  Kuba's calculations are based on Stojkovich's findings that the pro-forma projections that were provided by Envy Hawaii management are reasonable.  Envy Hawaii explained that Kuba has done several valuations of automobile dealerships and in his report he analyzed Stojkovich's work, including the pro-forma projections, to assess whether they were reliable for purposes of Kuba's own valuation analysis.  Volvo's challenges to Kuba's Discount Cash Flow Method analysis are similar to its challenges to Stojkovich's opinion.  Just as with Stojkovich's opinion, Volvo may cross-examine Kuba about his reliance on Envy Hawaii's pro-forma projections based on the sales goals provided to Envy Hawaii by Volvo.  Volvo's challenges to their opinions go to the weight of the evidence, not the admissibility.  Alaska Rent-A-Car, Inc., 738 F.3d at 970.

"The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance that it would be helpful to the jury."  Id.  The Court finds that the testimony of both Eric Stojkovich and Gary Kuba would be helpful to the jury.

Neither expert may offer testimony based on the 2017 financial records that Envy Hawaii created in the absence of the actual records.

**CONCLUSION**

Volvo Car USA's Motion to Exclude Opinions and Testimony of Eric Stojkovich and Gary Kuba (ECF No. 160) is **GRANTED, IN PART, AND DENIED, IN PART.**

The experts may not rely on any financial statements created by Envy Hawaii for 2017 in the absence of its actual 2017 financial records.

Plaintiff Envy Hawaii was instructed to file amended expert reports that do not rely on the Envy Hawaii created 2017 financial statements on or before Thursday, November 14, 2019.

Defendant Volvo Car USA may file rebuttal or objections to the amended reports on or before Wednesday, November 27, 2019.

IT IS SO ORDERED.

Dated: November 26, 2019, Honolulu, Hawaii.

Helen Gillmor
United States District Judge